(No. 59525

NORMA J. DARNELL, Appellant, v. IMPACT INDUS-
TRIES, INC., Appellee.

*Opinion filed November 30, 1984.—Rehearing denied
February 1, 1985.*

SIMON, J., concurring.
MORAN, J., RYAN, C.J., and UNDERWOOD, J., dissenting.

Dallas C. Ingemunson, of Yorkville, for appellant.

J. Alfred Moran, Samuel W. Witwer, Jr., and Thomas D. Burlage, of Witwer, Moran, Burlage & Witwer, of Chicago (Stephen J. Nagy, of counsel), for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Norma J. Darnell, appealed from the judgment of the circuit court of Kendall County entered upon a verdict directed in favor of defendant, Impact Industries, Inc. The appellate court reversed (119 Ill. App. 3d 763), and we allowed defendant's petition for leave to appeal (94 Ill. 2d R. 315(a)). The pleadings and facts are adequately set forth in the opinion of the appellate court and will be restated here only to the extent necessary to discuss the issues.

The testimony shows that on May 7, 1981, plaintiff completed an application for employment and submitted

it to defendant. The employment application contained the following questions:

"Have you had a serious illness or injury in the past 5 years?"

"Have you ever received compensation for injuries?"

Plaintiff answered "No" to both questions.

Following an interview, she was told she could begin work the following Monday, May 11, 1981. She worked that Monday without incident. The next day, one of plaintiff's co-employees told the personnel office that plaintiff had sustained injuries on her previous job. Defendant's personnel administrator, Janet Spears, made telephone calls to Federal-Huber Corporation and CTS Knights Company, plaintiff's previous employers, and verified plaintiff's dates of employment at Federal-Huber and that she had filed a claim under the Workers' Compensation Act. The personnel manager at Federal-Huber told Spears that on April 16, 1980, plaintiff had injured her neck and had received workers' compensation benefits. Spears then called plaintiff's earlier employer, CTS Knights Company, and was told that although plaintiff had not filed a workers' compensation claim while employed there, she had taken several lengthy medical leaves.

That same day, May 12, defendant's personnel office summoned plaintiff to discuss the injuries and claim. Although she acknowledged that while employed at Federal-Huber she had filed a workers' compensation claim, she stated that she had dismissed the claim and had received no compensation payments. She denied that any of her injuries or illnesses were serious. Pending an investigation, she was suspended until the following Friday, May 15. On May 15, plaintiff was discharged.

Plaintiff brought an action for retaliatory discharge against both defendant and Federal-Huber. Federal-Huber was voluntarily dismissed as a defendant. The circuit

court denied defendant's motion to dismiss for failure to state a cause of action. At trial, at the close of plaintiff's case, the circuit court allowed defendant's motion for a directed verdict.

Although the appellate court did not decide the question, we consider first whether the allegations of plaintiff's complaint stated a cause of action for retaliatory discharge. It was alleged in the complaint that plaintiff was discharged from her employment because she filed a workers' compensation claim. The sufficiency of the complaint was raised by defendant's motion to dismiss, and for purposes of the motion, the facts well pleaded must be taken as true. *Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 187.

Defendant contends that the tort of retaliatory discharge proscribes only employment decisions which are "retaliatory" and contemplates that the filing of the workers' compensation claim and the discharge involve the same employer and employee. It argues that, under the circumstances alleged here, plaintiff's discharge by defendant because of a claim against a prior employer was not violative of a "clearly mandated public policy." *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 130.

Plaintiff argues that the evil resulting from the discharge of an employee for having filed a workers' compensation claim against a prior employer is as great as if the discharge had been effected by the prior employer. We agree. We perceive no distinction between the situation where an employee is discharged for filing a workers' compensation claim against the defendant employer and one where the employer discharges the employee upon discovering that the employee had filed a claim against another employer. In either situation a retaliatory discharge is equally offensive to the public policy of this State as stated in the Workers' Compensation Act

(Ill. Rev. Stat. 1983, ch. 48, par. 138.4(h)). To hold that the tort of retaliatory discharge requires that the workers' compensation claim be made against the discharging employer would seriously undermine the comprehensive statutory scheme which provides "for efficient and expeditious remedies for injured employees." *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 182; see also *Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143.

We consider next the question whether the circuit court erred in directing a verdict in favor of the defendant. Plaintiff testified that she was told that she was being discharged because she had filed a workers' compensation claim. Also in evidence is a memorandum prepared by defendant's personnel administrator, Janet Spears, which indicated that the calls to plaintiff's previous employers were made in order to determine whether she had filed a workers' compensation claim. A verdict should not be directed unless "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.) We conclude that, viewed in its aspect most favorable to plaintiff, the evidence did not overwhelmingly favor defendant. The appellate court correctly held that the circuit court erred in directing a verdict in favor of defendant.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICE SIMON, concurring:

I join in the opinion of the court and concur in the result. I write separately to explain my understanding of the limits of our holding.

The circuit court allowed the defendant's motion for a

directed verdict at the close of the plaintiff's case. As I view our opinion, it holds only that the circuit court erred in directing a verdict before the defendant had presented its case. The plaintiff testified that she had been told that she was discharged because she had filed a workers' compensation claim against a previous employer, and there was no testimony or other evidence to the contrary at that point. A discharge for that reason would undermine the statutory scheme for remedies for injured employees.

Our opinion does not suggest, however, much less hold, that the defendant could not have discharged the plaintiff for dishonesty if it demonstrated, as it contends was the case, that she had lied on her application. The verdict was directed before the defendant offered any evidence of its reason for discharging the plaintiff. What the reason for the discharge was is a question of fact to be determined by the finder of fact after the defendant has presented its case.

JUSTICE MORAN, dissenting:

The majority finds that the plaintiff's complaint was sufficient to state a cause of action for retaliatory discharge under this court's decision in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172. The complaint alleged that plaintiff was discharged because she had previously filed a claim for workers' compensation against a former employer. Because I view the continuing expansion of this tort action to be imprudent, I am unable to join in the opinion of my colleagues.

This court has stated that the tort of retaliatory discharge "is an exception to the general rule that an 'at-will' employment is terminable at any time for any or no cause." (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 128.) Yet, the rulings of this court in recent cases belie these words by enlarging the excep-

tion to the point where it now threatens to swallow the general rule.

*Kelsay* established that an employer's "otherwise absolute power to terminate an employee at will" (74 Ill. 2d 172, 181) would not prevail if exercised to prevent an employee from asserting his statutory rights under the Workman's Compensation Act (now known as Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par 138.1 *et seq.*)). In *Kelsay*, a workman's compensation claim was filed against the discharging employer. Upon receiving notice of the suit, the defendant's personnel manager informed plaintiff that Motorola had a policy of terminating the employment of employees who pursued such claims. (74 Ill. 2d 172, 179.) Under these facts, the court determined that an action for retaliatory discharge should be allowed in order to prevent employers from placing employees in the untenable position of choosing between their jobs or their remedies under the Act.

The court later expanded this cause of action in *Palmateer*. In that case, an at-will employee filed a complaint against his employer alleging that he was fired for supplying information to local law-enforcement officials concerning the possible criminal involvement of a fellow employee. A majority of this court found that the complaint stated a cause of action for retaliatory discharge, stating: "the foundation of the tort of retaliatory discharge lies in the protection of public policy, and there is a clear public policy favoring investigation and prosecution of criminal offenses." (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 133.) Unlike the employee in *Kelsay*, however, the plaintiff in *Palmateer* was not asserting a statutory right. Therefore, I joined Chief Justice Ryan's dissent, which cautioned against expanding the rule announced in *Kelsay* to encompass discharges in violation of what the judiciary may perceive to be the public policy of this State. As that dissent

points out, the question of public policy is first and foremost a matter of legislative concern. *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 137 (Ryan, J. dissenting).

Most recently I disagreed with the court's extension of this tort in *Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, where the majority allowed employees covered by a collective-bargaining agreement to file an action in tort for retaliatory discharge without first exhausting or even initiating contractual remedies set forth in the collective-bargaining agreement.

Yet despite past disagreements over the scope of this tort, all its decisions, thus far, have recognized the existence of a cause of action for retaliatory discharge within a single employment relationship. In the instant case plaintiff did not file a claim for workers' compensation against Impact Industries, the discharging employer. Rather, plaintiff had previously freely exercised her rights under the Workers' Compensation Act while in the employ of Federal-Huber. It should also be noted that Federal-Huber and Impact Industries are unrelated business concerns. In acknowledging a cause of action against a subsequent employer who did nothing to interfere with plaintiff's exercise of her rights under the Workers' Compensation Act, the court has cast the tort of *retaliatory* discharge free from its traditional mooring and, in my view, onto a precarious course. Henceforth, a worker who has filed a claim under the Act may bring suit against any subsequent employer—regardless of the length of time that intervenes—if the employer considers the filing of that claim in making an employment decision. In so holding, the court has expanded the class of defendants who may now be compelled to defend a suit for retaliatory discharge and unlimited punitive damages.

Under the reasoning of the majority, it seems clear

that if plaintiff had honestly answered the two questions on the application at issue here, and defendant had refused to hire her on that basis, the same public policy which the majority finds offended in the case at bar would be compromised. Would the court then recognize such a 'non-hiring' as a form of retaliation? Such an expansion is inevitable if the court proceeds along this uncharted course. If the concept of at-will employment is to retain any vitality, this court or the legislature must establish some boundaries.

For the foregoing reasons, I respectfully dissent.

RYAN, C.J., and UNDERWOOD, J., join in this dissent.