Walter SPEARMAN, Plaintiff–Appellant,

v.

EXXON COAL USA, INC., Defendant–Appellee.

No. 92–3837.

United States Court of Appeals, Seventh Circuit.

Argued May 14, 1993.

Decided Feb. 11, 1994.

William G. Kaseberg (argued), Edwardsville, IL, for plaintiff-appellant.

William A. Schmitt, Edward S. Bott, Jr. (argued), Thomas R. Burcham, III, Thompson & Mitchell, Belleville, IL, for defendant-appellee.

Before BAUER, EASTERBROOK, and ROVNER, Circuit Judges.

EASTERBROOK, Circuit Judge.

Exxon Coal USA has a progressive discipline system. Exxon resorted to ever-higher levels of discipline for Walter Spearman's absenteeism. In September 1988 Exxon fired Spearman for this unreliability. In lieu of filing a grievance under the collective bargaining agreement, Spearman signed a "last chance agreement" permitting him to keep his job. This agreement provided that Spearman would be sacked, without any opportunity for further complaint, if he missed 84 hours of scheduled work "for any reason" between September 15, 1988, and July 26, 1989. Spearman was sent home on February 2, 1989, because his supervisor smelled alcohol on his breath; the time he missed that day put him over the 84–hour mark, and his employment ended.

Exxon counted toward the 84 hours 44.5 that Spearman took off in January 1989 because of a bruised chest. Spearman filed this suit in state court, contending that including time he missed because of injury produced a discharge in retaliation for the exercise of his rights under the workers' compensation laws of Illinois. Although no state statute establishes such a rule, the Supreme Court of Illinois treats retaliatory discharge as a tort. *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978). Exxon removed the case to federal court. A jury concluded that Exxon had not retaliated against Spearman for the exercise of any right afforded by the workers' compensation laws. The verdict is beyond serious challenge, for the jury was entitled to find that Exxon acted because of the number of hours Spearman missed rather than the reason he missed them, and Illinois does not block an employer from taking account of an employee's inability to work as opposed to

his exercise of legal rights. See *McEwen v. Delta Air Lines, Inc.*, 919 F.2d 58 (7th Cir. 1990); *Hartlein v. Illinois Power Co.*, 151 Ill.2d 142, 160, 176 Ill.Dec. 22, 30, 601 N.E.2d 720, 728 (1992) ("[A]n employer may fire an employee for excess absenteeism, even if the absenteeism is caused by a compensable injury.... Simply put, 'Illinois allows employers to act on the basis of their employee's physical disabilities; it is only the request for benefits that state law puts off limits as a ground of decision.'" (quoting from *McEwen*, 919 F.2d at 60)); *Hess v. Clarcor, Inc.*, 237 Ill.App.3d 434, 177 Ill.Dec. 888, 603 N.E.2d 1262 (2d Dist.1992); *Miller v. J.M. Jones Co.*, 225 Ill.App.3d 799, 807, 167 Ill.Dec. 385, 391, 587 N.E.2d 654, 660 (4th Dist.1992). Spearman's quibbles with the jury instructions do not require analysis beyond citation to these cases. His only serious argument is that the inquiry into Exxon's motive should have been made by a jury in state court rather than a jury in federal court.

■ Exxon removed the case under the diversity jurisdiction. See 28 U.S.C. § 1441(a). The potential obstacle is 28 U.S.C. § 1445(c): "A civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." According to Spearman, a claim of retaliation for the exercise of rights under the workers' compensation laws "arises under" those laws even though the claim rests on general tort doctrines rather than the contents of the statutes. We have considered and rejected this claim before, in a case dealing with the *Kelsay* tort in Illinois. *Lingle v. Norge Division of Magic Chef, Inc.*, 823 F.2d 1031, 1038–39 (7th Cir.1987) (en banc). Nonetheless, Spearman believes, the Supreme Court's reversal, 486 U.S. 399 (1988), albeit on other grounds, drains force from *Lingle*, even though that Court did not mention § 1445(c). The fifth circuit has since gone into conflict with *Lingle*, although it does not appear to have recognized that it was doing so. *Jones v. Roadway Express, Inc.*, 931 F.2d 1086, 1091–92 (5th Cir.1991). Spearman asks us to abandon *Lingle* and follow *Jones*.

■ Like this case, *Lingle* was removed under the diversity jurisdiction. We added that federal-question jurisdiction was independently available because the claim necessarily rested on a collective-bargaining agreement, a circumstance that also preempted state remedies; with that conclusion the Supreme Court disagreed. It did not question our holding that § 1445(c) did not require remand, because the *Kelsay* tort did not "arise under the workmen's compensation laws" of Illinois. The basis of removal, whether diversity or a federal question, was logically irrelevant to the scope of § 1445(c). Even a case containing a federal claim may not be removed if it *also* arises under state workers' compensation law. *Lingle* gave two reasons for concluding that the case did not arise under workers' compensation law. First, we observed, § 1445(c) is designed to prevent removals that would nullify the "expedit[ious] and inexpensive" procedures states had devised for workers' compensation claims (823 F.2d at 1038, quoting from a legislative report). Retaliatory-discharge litigation is anything but simple and expeditious; tort litigation in federal court is no more cumbersome than tort litigation in state court. Second, we believed, workers' compensation regimes entail limited compensation without fault, the antithesis of the motive-based *Kelsay* tort in which unlimited compensatory and punitive damages are available:

> Our view that the tort of retaliatory discharge is not a worker's compensation law is supported by the fact that, as a matter of federal law, worker's compensation laws provide limited no-fault compensation for an injury; this limit on damages is in exchange for the elimination of general tort rules and defenses. *See Larson, Workmen's Compensation* § 1.10 (desk ed. 1986). The Illinois tort of retaliatory discharge lacks, for purposes of § 1445(c), the essential elements of a worker's compensation law.

823 F.2d at 1039 n. 9. That federal law supplies the definition of "workmen's compensation laws" is beyond doubt. *Grubbs v. General Electric Credit Corp.*, 405 U.S. 699, 705, 92 S.Ct. 1344, 1349, 31 L.Ed.2d 612 (1972); *Standard Oil Co. v. Johnson*, 316 U.S. 481, 483, 62 S.Ct. 1168, 1169, 86 L.Ed. 1611 (1942); *Burda v. M. Ecker Co.*, 954 F.2d 434, 437 (7th Cir.1992). A state could not prevent removal of ordinary tort cases by calling its common law of torts a "workmen's compensation law." *Lingle*, 823 F.2d at 1039. Our conclusion that the *Kelsay* tort lacks the essential no-fault element of workers' compensation laws stands untouched by the Supreme Court's analysis in *Lingle*—and we continue to believe that it is correct.*

Section 1445(c) was enacted in 1958. An apt way to understand its meaning is to ask how a sophisticated legal audience would have understood the words "workmen's compensation law" at the time. As we observed in *Lingle*, liability without fault (and with limited recovery) for injuries in the course of employment was the standard definition in 1986, and it was the prevailing definition in 1958 and before. When dealing with a federal workers' compensation act, the Supreme Court wrote: "A prime purpose of the Act is to provide residents of the District of Columbia with a practical and expeditious remedy for their industrial accidents and to place on District of Columbia employers a limited and determinate liability." *Cardillo v. Liberty Mutual Insurance Co.*, 330 U.S. 469, 476, 67 S.Ct. 801, 806, 91 L.Ed. 1028 (1947). There are many similar descriptions of the workers' compensation principle in judicial decisions and legal dictionaries. *No* case or definition from the 1950s and before—at least none that we could find—treats unlimited liability for an intentional tort as part of a workers' compensation program. Perhaps this is because such liability is relatively recent. Illinois did not add an anti-retaliation component to its statutes until 1975, see 820 ILCS 305/4(h), and even then it omitted any private remedy. *Kelsay*, decided in 1978, is among

---

* This opinion was circulated before release to all judges in regular active service. See Circuit Rule 40(f). A majority did not favor a hearing en banc on the question whether the tort of retaliatory discharge "arise[s] under the workmen's compensation laws" of Illinois. Judges Cudahy, Flaum, Ripple, and Rovner voted to hear the case en banc. Judges Cummings and Coffey did not participate in the consideration or decision of this case.

the first cases in the nation to create a remedy in tort for retaliatory discharge. It cited only two predecessors, one from 1973 and the other from 1976. See 74 Ill.2d at 182, 23 Ill.Dec. at 563, 384 N.E.2d at 357. Old words may gain new meaning as circumstances change, but old words in statutes retain their meaning; change depends on amendment. *West Virginia University Hospitals, Inc. v. Casey,* 499 U.S. 83, 97–102, 111 S.Ct. 1138, 1146–48, 113 L.Ed.2d 68 (1991); *National Broiler Marketing Co. v. United States,* 436 U.S. 816, 827, 98 S.Ct. 2122, 2129, 56 L.Ed.2d 728 (1978). Thus after an independent consideration of the subject we adhere to *Lingle.* A fault-based regime with common law damages is not a "workmen's compensation law" no matter what the state calls it.

What is more, Illinois does not believe that the *Kelsay* tort is a workers' compensation law. *Kelsay* called its rule an "independent tort action". 74 Ill.2d at 184, 23 Ill.Dec. at 564, 384 N.E.2d at 358. Later cases have emphasized that the tort is distinct from the workers' compensation laws. E.g., *Rubenstein Lumber Co. v. Aetna Life & Casualty Co.,* 122 Ill.App.3d 717, 719, 78 Ill.Dec. 541, 542–43, 462 N.E.2d 660, 661–62 (1st Dist. 1984); *Suddeth v. Caterpillar Tractor Co.,* 114 Ill.App.3d 396, 70 Ill.Dec. 329, 449 N.E.2d 203 (2d Dist.1983) (because the tort is independent of the workers' compensation laws, a settlement discharging the employer from all liability under the workers' compensation laws does not bar a suit alleging retaliatory discharge). See also *Lingle,* 823 F.2d at 1035–36. Because the *Kelsay* tort is independent of the workers' compensation claim, an employee is forbidden to join the two in a single action before the agency that administers the state's compensation program. *Garrison v. Industrial Commission,* 83 Ill.2d 375, 47 Ill.Dec. 347, 348, 415 N.E.2d 352, 354 (1980). Shortly after deciding *Kelsay,* the Supreme Court of Illinois generalized its principle to bar retaliation that interfered with any substantial public policy of the state, thus liberating the tort from dependence on the workers' compensation laws. E.g., *Palmateer v. International Harvester Co.,* 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981); *Darnell v. Impact Industries,*

*Inc.,* 105 Ill.2d 158, 85 Ill.Dec. 336, 473 N.E.2d 935 (1984). The anti-retaliation rule in the workers' compensation law, which lacks any enforcement mechanism, has played no role in this development and plays no role in litigation under *Kelsay*—a fact demonstrated by the expansion of the tort into other bodies of law lacking any counterpart to § 305/4(h).

Workers' compensation law serves as the background of the *Kelsay* tort, furnishing the "public policy" that the employer must respect. That workers' compensation law is a premise of the tort does not mean that the tort "arises under" the workers' compensation laws, any more than a state tort based on the violation of a federal safety standard "arises under" that standard for purposes of the federal question jurisdiction in 28 U.S.C. § 1331. See *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). Many federal rules serve as the jumping-off point for state claims without converting these into claims under federal law. For example, if there were no copyright laws, there could be no dispute about who owns a copyright. Yet it is settled that a dispute about the ownership of a copyright arises under state rather than federal law. *T.B. Harms Co. v. Eliscu,* 339 F.2d 823 (2d Cir.1964) (Friendly, J.). Workers' compensation laws play the same role in the *Kelsay* tort as copyright laws did in *T.B. Harms* and the federal safety standard did in *Merrell Dow.* A claim of retaliatory discharge may be adjudicated without any inquiry into the meaning of the workers' compensation laws; the question for decision usually is the employer's motive for adverse action rather than the entitlement to compensation for injury on the job. Cf. *Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 809, 108 S.Ct. 2166, 2174, 100 L.Ed.2d 811 (1988); *Gully v. First National Bank in Meridian,* 299 U.S. 109, 114–15, 57 S.Ct. 96, 98, 81 L.Ed. 70 (1936); *Shulthis v. McDougal,* 225 U.S. 561, 569–70, 32 S.Ct. 704, 706, 56 L.Ed. 1205 (1912), among the many cases stating that the dependence of a claim on federal law does not mean that the claim arises under that law, unless the suit presents a dispute about the validity, con-

struction, or effect of the law. So even if *Lingle* were wrong in concluding that only a system of liability without fault can be a "workmen's compensation law" under § 1445(c), the *Kelsay* tort would not "arise under" the industrial accident compensation system of Illinois. This case was properly removed and properly decided after removal.

AFFIRMED.

ILANA DIAMOND ROVNER, Circuit Judge, dissenting.

The majority today upholds a jury verdict that I too find eminently reasonable. That verdict easily withstands the substantive attacks Walter Spearman lodges here, and the court is therefore understandably loathe to disturb it. In my view, however, we should vacate the jury's verdict and remand the case to state court because Spearman's suit arises under the workmen's compensation laws of the State of Illinois and 28 U.S.C. § 1445(c) therefore prohibited its removal to federal court.

Spearman originally filed this retaliatory discharge action in the Circuit Court of Clinton County, Illinois, alleging that work-related injuries had rendered him temporarily totally disabled for purposes of the Illinois Workers' Compensation Act, 820 ILCS § 305/1 *et seq.* (the "Act"). Spearman further alleged that Exxon had fired him for asserting his rights under the Act, thereby violating section 305/4(h), which prohibits discharge in retaliation for the filing of a workers' compensation claim.[1] The majority today holds that Exxon properly removed Spearman's claim despite section 1445(c)'s prohibition against the removal of "[a] civil action in any State court arising under the workmen's compensation laws of such State." Adopting an unnecessarily restrictive view of those cases that arise under a State's workmen's compensation laws, the majority finds that Spearman's suit did not arise under those laws. I disagree. Although section 305/4(h) provides for public and not private enforcement and the Illinois Supreme Court therefore had to imply a private right of action in *Kelsay*, a cause of action for retaliatory discharge nonetheless arises under the workmen's compensation laws of Illinois for purposes of section 1445(c).

The majority considers the issue to have been settled by *Lingle v. Norge Div. of Magic Chef, Inc.*, 823 F.2d 1031 (7th Cir.1987) (en banc), *rev'd,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), *on remand,* 857 F.2d 422 (7th Cir.1988). I interpret that decision differently than do my colleagues. In my view, what remains of *Lingle* after its reversal by the Supreme Court has little if any effect on the section 1445(c) issue presented here. Because one of the consolidated retaliatory discharge claims in *Lingle,* like Spearman's here, was removed solely on diversity grounds, the majority deduces that *Lingle* approved of removal on that basis. My colleagues then suggest that *Lingle* merely "added that federal-question jurisdiction was independently available because the claim necessarily rested on a collective-bargaining agreement...." (*Ante* at 724.) Yet *Lingle* never so much as discussed the propriety of diversity jurisdiction; instead, it focused entirely on whether a federal question was presented under the collective bargaining agreement.[2] *Lingle* is thus not authority for

---

1. Section 305/4(h) provides:

    It shall be unlawful for any employer ... to interfere with, restrain or coerce an employee in any manner whatsoever in the exercise of the rights or remedies granted to him or her by this Act or to discriminate, attempt to discriminate, or threaten to discriminate against an employee in any way because of his or her exercise of the rights or remedies granted to him or her by this Act.

    It shall be unlawful for any employer, individually or through any insurance company or service or adjustment company, to discharge or to threaten to discharge, or to refuse to rehire or recall to active service in a suitable capacity an employee because of the exercise

    of his or her rights or remedies granted to him or her by this Act.

2. One of the consolidated cases in *Lingle* had been removed on diversity grounds whereas the other had been removed solely because it allegedly presented a federal question. 823 F.2d at 1034–35, 1040. The *Lingle* opinion, however, focused only on whether removal was proper on federal question grounds:

    A federal court may not, of course, address the merits of a claim without first determining whether it has jurisdiction. Accordingly, when a case is removed to federal district court under 28 U.S.C. § 1441(b), the Court must be

the exercise of jurisdiction here, where removal was effected solely on diversity grounds and no claim is made that the suit requires interpretation of a collective bargaining agreement.[3]

*Lingle* itself plainly cast the jurisdictional analysis in federal question terms:

The plaintiffs argue that section 1445(c) of Title 28 of the United States Code bars the removal of their retaliatory discharge claims, because these claims arise under the Workers' Compensation Act of Illinois. We must first determine, therefore, whether or not § 1445(c) bars the removal of the plaintiffs' retaliatory discharge claims. *We conclude that § 1445(c) does not bar removal of the plaintiffs' claims, because each plaintiff has asserted a claim for breach of the collective bargaining agreement and not a worker's compensation claim. See Vantine v. Elkhart Brass Mfg. Co.,* 762 F.2d 511, 517 (7th Cir.1985) *("In view of the fact that the employee has a cause of action for breach of the collective bargaining agreement,* the claim does not arise under the Indiana Workman's Compensation Act, and thus federal jurisdiction is not barred under 28 U.S.C. § 1445(c).").

823 F.2d at 1038 (emphasis added). The court thus determined that section 1445(c) did not prevent removal *because* the claims were based on the collective bargaining agreement and hence arose under federal law. The court never stated that section 1445(c) would not bar removal of the claim in the absence of a collective bargaining agreement. This reasoning was evident again later in *Lingle:*

The determination of whether the tort of retaliatory discharge arises under federal law, and is therefore removable, is a federal question. *We conclude that the plaintiffs' retaliatory discharge claims arise under federal law, so that § 1445(c) does not bar removal.*

*Id.* at 1039 (emphasis added) (citation omitted).[4] *Lingle*'s resolution of the removal issue clearly depended on the court's conclusion that the claims required interpretation of the collective bargaining agreement and for that reason arose under federal and not state law. *See id.* at 1041 ("although the plaintiff's claim is based on a state tort, it is actually a claim for a breach of the collective bargaining agreement").

Yet the Supreme Court, having granted certiorari on the issue of federal preemption of the state retaliatory discharge claims, expressly rejected the premise on which this court's jurisdictional holding was based—that the plaintiffs' claims required interpretation of the collective bargaining agreement. 486 U.S. at 407, 108 S.Ct. at 1882. In finding that the plaintiffs' claims were not preempted by section 301 of the Labor Management Relations Act ("LMRA"), the Court explained that "the state-law remedy in this case is 'independent' of the collective-bargaining agreement" in that "resolution of the state-law claim does not require construing the collective-bargaining agreement." *Id.* Although the Court did not address removal

---

assured that the claim arises under the Constitution, treaties, or laws of the United States. Only after a court finds that it has jurisdiction may it reach the merits.

*Id.* at 1037.

**3.** It seems unlikely that the *Lingle* court would have devoted the better part of five Federal Reporter pages to the federal nature of the plaintiffs' claims if the court had separately determined that it had diversity jurisdiction and that the plaintiffs' retaliatory discharge claims did not arise under the Illinois workmen's compensation laws. *See Lingle,* 823 F.2d at 1038–42. Indeed, at the start of its removal discussion, the court stated: "In order to determine removability we must examine, as a matter of federal law, the nature of the plaintiffs' claims." *Id.* at 1035. Moreover, at the conclusion of that discussion, the court summarized its jurisdictional holding:

"Once a court determines that a plaintiff's complaint—either on its face or as artfully pleaded—states a claim for a federal remedy, ... then the district court may conclude that removal is proper." *Id.* at 1042. Neither statement makes any mention of diversity jurisdiction and, indeed, the mode of analysis suggests none was necessary.

**4.** *See also id.* at 1040 ("removal was proper because both complaints stated claims that arose under federal law"); *id.* at 1041 ("these claims arise under federal law, and removal is proper"); *id.* at 1042 ("federal law is controlling, and the suit was properly removed").

Of course, after finding that the cases were properly removed, *Lingle* went on to hold that the plaintiffs' retaliatory discharge claims were preempted by section 301 of the Labor Management Relations Act. *Id.* at 1049.

or section 1445(c), its conclusion on the preemption issue swept away this court's basis for determining that the plaintiffs' claims had arisen under federal and not state law. Because the Supreme Court determined that the *Lingle* plaintiffs had alleged only state law claims, it is clear that those claims could not be removed to federal court on the basis of federal question jurisdiction, as this court had decided below. *See Lingle,* 823 F.2d at 1039, 1051.

The majority finds that *Lingle* is nonetheless controlling because the Supreme Court never mentioned section 1445(c) and did not question *Lingle's* holding that "the *Kelsay* tort did not 'arise under the workmen's compensation laws' of Illinois." (*Ante* at 724.) But the Court's failure to mention section 1445(c) is not surprising, as its opinion makes clear that it had granted certiorari only on the preemption issue, on which the circuits had split. *Lingle,* 486 U.S. at 402–03, 108 S.Ct. at 1880. As for *Lingle's* "holding" regarding the Illinois workmen's compensation laws, my colleagues apparently are referring only to the following footnote, which makes passing reference to the issue that is now *squarely presented* by this appeal:

> Our view that the tort of retaliatory discharge is not a worker's compensation law is supported by the fact that, as a matter of federal law, worker's compensation laws provide limited no-fault compensation for an injury; this limit on damages is in exchange for the elimination of general tort rules and defenses. The Illinois tort of retaliatory discharge lacks, for purposes of § 1445(c), the essential elements of a worker's compensation law.

*Lingle,* 823 F.2d at 1039 n. 9 (citation omitted). That footnote arguably supports the majority's conclusion that Spearman's claim did not arise under the workmen's compensation laws of Illinois and that section 1445(c) would not prevent removal of the claim to federal court. Yet, in light of *Lingle's* conclusion that the plaintiffs' claims had arisen under federal and not state law, the footnote was clearly dicta. It was not the focus of the court's jurisdictional holding, nor was it analyzed or developed in any detail. By now elevating *Lingle's* dicta to the law of this circuit, the majority has taken an unacknowledged and, in my view, ill-advised step.

I am not alone in my view that *Lingle* does not control a retaliatory discharge claim that is unrelated to a collective bargaining agreement.[5] As the majority notes, the Fifth Circuit has "gone into conflict with *Lingle,* although it does not appear to have recognized that it was doing so." (*Ante* at 723) (citing *Jones v. Roadway Express, Inc.,* 931 F.2d 1086, 1091–92 (5th Cir.1991)). To my mind, the Fifth Circuit may not have "recognized" any "conflict" because it realized that *Lingle* did not address a case in which a retaliatory discharge claim did not require interpretation of a collective bargaining agreement and diversity was the sole basis for federal jurisdiction. *Jones* created no conflict with *Lingle;* rather, the majority today creates a conflict with *Jones.*

Nor have the federal district courts in Illinois shared the interpretation of *Lingle* that my colleagues advance today. Rather, most have remanded retaliatory discharge claims like Spearman's without regard to *Lingle. See, e.g., Kolnes v. J.B. Hunt Transport, Inc.,* No. 93 C 4718, 1993 WL 346452, 1993 U.S.Dist. LEXIS 12475 (N.D.Ill. Sept. 8, 1993) (finding retaliatory discharge claim non-removable as falling squarely under section 305/4(h) of the Illinois Act);[6] *Rodkey v. W.R. Grace & Co.,* 764 F.Supp. 1313 (N.D.Ill. 1991) (section 1445(c) expressly prohibits removal of a retaliatory discharge claim alleging a violation of section 305/4(h)); *see also Rosell v. Roadway Express, Inc.,* 702 F.Supp. 681, 683–84 (N.D.Ill.1988) (*Lingle* only addressed a preemption situation and

---

5. Indeed, in discussing the legislative history of section 1445(c), *Lingle* itself stated that "[s]ection 1445(c) thus bars removal of all worker's compensation claims" and cited two decisions which hold that retaliatory discharge claims such as Spearman's could not be removed even if diversity existed. 823 F.2d at 1038 (citing *Alexander v. Westinghouse Hittman Nuclear, Inc.,* 612 F.Supp.

1118 (N.D.Ill.1985); *Thomas v. Kroger Co.,* 583 F.Supp. 1031 (S.D.W.Va.1984)).

6. *Kolnes* distinguished the *Lingle* situation as being one where "removal jurisdiction has been found to be proper on pre-emption grounds...." *Id.* 1993 WL 346452, at *2 n. 1, 1993 U.S.Dist. LEXIS 12475, at *2 n. 1.

did not discuss whether section 1445(c) prevents removal of a retaliatory discharge claim not preempted by federal law); *Agema v. Clark Oil and Refining Corp.*, No. 87 C 6330, 1987 WL 26140, 1987 U.S.Dist. LEXIS 11122 (N.D.Ill. Dec. 1, 1987) (discussing removal aspect of *Lingle* only in preemption terms). Indeed, I have not found a single decision in this circuit, other than the district court's opinion below, which cites *Lingle* for the proposition that a retaliatory discharge claim unrelated to a collective bargaining agreement may be removed to federal court on diversity grounds without regard to section 1445(c).

Yet the majority contends, without citation to authority, that "[t]he basis of removal [in *Lingle* ], whether diversity or a federal question, was logically irrelevant to the scope of § 1445(c). Even a case containing a federal claim may not be removed if it *also* arises under state workers' compensation law." (*Ante* at 724 (majority's emphasis).) The majority thus assumes that it is possible for a claim to arise under the laws of the United States pursuant to 28 U.S.C. § 1331 and at the same time to arise under a State's workmen's compensation laws. But neither *Lingle* nor other decisions from this circuit have discussed the section 1445(c) issue in those terms. Indeed, *Lingle* never suggested that the same retaliatory discharge claim could arise under both federal and state law; rather, *Lingle* held that section 1445(c) did not bar removal *precisely because* the plaintiffs' claims arose under federal law. In most

instances, "[a] suit arises under the law that creates the cause of action" (*American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916); *see also Jones*, 931 F.2d at 1092), and in these circumstances, I believe that can only be one law. Thus, a single retaliatory discharge claim cannot arise under both federal and state law for purposes of sections 1331 and 1445(c).

Our decision in *Burda v. M. Ecker Co.*, 954 F.2d 434, 438 (7th Cir.1992), is consistent with that view, confirming that the basis of removal *is* relevant. There, we held that section 1445(c) did not bar removal because the plaintiff's claim arose under the federal internal revenue statutes. After concluding that the claim arose under federal law, the court did not separately consider whether the claim also arose under the Illinois Workers' Compensation Act—the court reasonably assumed that the claim arose under one or the other law, but not both. *Id.*[7] The same was true in *Vantine v. Elkhart Brass Mfg. Co.*, 762 F.2d 511 (7th Cir.1985). There, the court considered whether the plaintiff's claim for retaliatory discharge arose under the Indiana Workman's Compensation Act or under section 301 of the LMRA. Foreshadowing *Lingle*, *Vantine* held that because "the employee has a cause of action for breach of the collective bargaining agreement, the claim does not arise under the Indiana Workman's Compensation Act, and thus Federal jurisdiction is not barred under 28 U.S.C. § 1445(c)." *Id.* at 517.[8] As in *Lingle*, the

---

7. *Burda* affirmed in relevant part the following district court decision:

There is only one cause of action in this case and the issue presented is whether it arises under federal or state law. If it arises legitimately under state law, it does not arise under federal law, § 1441(b) is not implicated, and the action is not removable regardless of § 1445(c). On the other hand, if the court determines that the plaintiff's action does arise under federal law, it is because it cannot arise under state law despite the clear language of the complaint. Obviously, § 1445(c) would not apply in such a situation. *Plaintiff apparently has failed to note that the purpose of § 1445(c) is to prevent removal of admittedly state-law claims under federal diversity jurisdiction.* Thus, with or without § 1445(c), the issue remains as to whether the plaintiff's claim arises under state or federal law.

*Burda v. M. Ecker Co.*, No. 89 C 8605, 1990 WL 17075, 1990 U.S.Dist. LEXIS 1195, *9 (N.D.Ill. Feb. 6, 1990) (emphasis added).

Indeed, courts generally have observed that section 1445(c) was intended to restrict only the diversity jurisdiction of the federal courts, apparently assuming that a case could not present a federal question for purposes of 28 U.S.C. § 1331 and at the same time arise under a State's workmen's compensation laws. *See Jones*, 931 F.2d at 1091; *Wallace v. Ryan–Walsh Stevedoring Co.*, 708 F.Supp. 144, 147 (E.D.Tex.1989); *Thomas v. Kroger Co.*, 583 F.Supp. 1031, 1036 (S.D.W.Va. 1984); *see also* S.Rep. No. 1830, 85th Cong., 2d Sess., *reprinted in* 1958 U.S.C.C.A.N. 3099, 3104–06.

8. *Vantine*, like *Lingle*, did not decide whether the claim would have arisen under the State's workmen's compensation laws in the absence of the collective bargaining agreement.

cause and effect analysis in *Vantine* rebuts the majority's theory that a claim can simultaneously arise under federal law and a State's workmen's compensation laws. *See Lingle*, 823 F.2d at 1041 (in *Vantine*, "we based our decision on our own review of whether the cause of action arose under state or federal .law").

In extending *Lingle* to a retaliatory discharge claim that is unrelated to a collective bargaining agreement, the majority creates a split amongst the circuits because its decision cannot be reconciled with *Jones v. Roadway Express, Inc.*, 931 F.2d 1086 (5th Cir.1991). *Jones* found that the plaintiff's retaliatory discharge claim arose under the workmen's compensation laws of Texas. The Texas statute differed from section 305/4(h) of the Illinois Act only in that it authorized a private civil action for retaliatory discharge, in addition to making such a discharge unlawful. *See* Tex.Rev.Civ.Stat.Ann. art. 8307c. *Jones* found that the express purpose of article 8307c was to safeguard the Texas workers' compensation scheme by "enabl[ing] injured workers to exercise their rights under that scheme." 931 F.2d at 1092. The court thus considered article 8307c to be a part of Texas' "workmen's compensation laws" for purposes of section 1445(c) and ordered that the plaintiff's retaliatory discharge claim be remanded to state court. *Id.*

I find *Jones* instructive here. Section 305/4(h) also prohibits retaliatory discharges but, as noted, does not provide a civil damages remedy to injured employees. Yet because the Illinois Supreme Court implied such a remedy in *Kelsay*, I see no basis for treating the Texas and Illinois situations differently. The retaliatory discharge action authorized by *Kelsay* simply recognizes a private action under section 305/4(h) and has

the same effect as article 8307c in providing a remedy to workers who file claims under the Act and are subsequently discharged. *Lingle* itself acknowledged that the motivating purpose behind *Kelsay* "was to uphold and implement the public policy" of the Act. It thus makes no difference for section 1445(c) purposes that *Kelsay* called the action an "independent tort" (*see ante* at 724), as the majority readily acknowledges that we look to federal law in deciding whether a claim arises under a state's "workmen's compensation laws." *Ante* at 724; *see also Burda*, 954 F.2d at 437; *Lingle*, 823 F.2d at 1039. Just as "[a] state could not prevent removal of ordinary tort cases by calling its common law of torts a 'workmen's compensation law'" (*ante* at 724), it also could not facilitate removal by calling a claim arising under its workmen's compensation laws an independent tort. As *Lingle* explained, a " 'state cannot be allowed, merely by the label it attaches to the cause of action, to interfere with the administration of a federal statute.' " 823 F.2d at 1039 (quoting *Graf v. Elgin, Joliet & E. Ry. Co.*, 790 F.2d 1341, 1345 (7th Cir.1986)); *see also Almanza v. Transcontinental Ins. Co.*, 802 F.Supp. 1474, 1479 (N.D.Tex.1992).[9] The remedy recognized in *Kelsay* effectuates a public policy embodied in the Act and should not be treated any differently under section 1445(c) than a similar civil action with express statutory authorization.

Yet the majority makes no attempt to distinguish *Jones* because it limits the term "workmen's compensation laws" only to those laws providing "liability without fault (and with limited recovery) for injuries in the course of employment." (*Ante* at 724.) The majority's restrictive interpretation would

---

**9.** The majority correctly observes that the tort of retaliatory discharge has since been expanded by the Illinois courts to include any discharge that violates "a clearly mandated public policy of the [S]tate of Illinois." *Hicks v. Resolution Trust Corp.*, 970 F.2d 378, 381 (7th Cir.1992); *see also Hinthorn v. Roland's of Bloomington, Inc.*, 119 Ill.2d 526, 116 Ill.Dec. 694, 696, 519 N.E.2d 909, 911 (1988); *Barr v. Kelso–Burnett Co.*, 106 Ill.2d 520, 88 Ill.Dec. 628, 632, 478 N.E.2d 1354, 1358 (1985). It thus is no longer limited to retaliatory discharges stemming from the filing of workers'

compensation claims. For example, it also encompasses the discharge of an employee for informing officials of the possible criminal activity of another employee. *See Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981). The majority therefore finds that the tort has been "liberated" from its dependence on the Act. (*Ante* at 725.) Yet the recognition that other types of retaliatory discharges would violate other public policies of the State of Illinois would not make the *Kelsay* cause of action any less a claim under the workmen's compensation laws of Illinois.

thus exclude even the *Jones* situation where a state worker's compensation statute provides a private civil remedy for a retaliatory discharge. Although section 1445(c) speaks broadly in terms of actions "arising under [a State's] workmen's compensation laws," the majority today rewrites the statute to provide that only a worker's compensation "claim," as the majority understands that term, arises under those laws. If Congress had intended that the statute be so limited, it is unlikely to have chosen the expansive phrase "arising under the workmen's compensation laws of such State." [10] Moreover, by so limiting the statute, the majority necessarily disagrees with the clear weight of authority, which has consistently remanded retaliatory discharge claims where a state statute either provided a private action for retaliatory discharge or where the state courts have implied such an action from a general prohibition against such discharges. *See, e.g., Jones,* 931 F.2d at 1091–92; *Thompson v. Cort Furniture Rental Corp.,* 797 F.Supp. 618 (W.D.Tenn.1992); *Kilpatrick v. Martin K. Eby Constr. Co.,* 708 F.Supp. 1241 (N.D.Ala.1989); *Wallace v. Ryan–Walsh Stevedoring Co.,* 708 F.Supp. 144 (E.D.Tex.1989) ("The few cases denying motions to remand on § 1445(c) grounds are distinguishable in that the retaliatory discharge cause of action at issue was not part of the statutory workmen's compensation scheme"); *Thomas v. Kroger Co.,* 583 F.Supp. 1031 (S.D.W.Va. 1984).[11]

Because section 305/4(h)'s prohibition against retaliatory discharges clearly is a part of Illinois' workmen's compensation laws for purposes of section 1445(c), Spearman's claim necessarily arises under those laws. In *Jones,* the Fifth Circuit interpreted the phrase "arising under" in section 1445(c) by looking to interpretations of the same phrase in 28 U.S.C. § 1331, the statute conferring jurisdiction in federal question cases. 931 F.2d at 620. That approach is reasonable, as Congress' use of a phrase so well-recognized in another context suggests its intent to import that meaning here. *See, e.g., Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 808–09, 108 S.Ct. 2166, 2174, 100 L.Ed.2d 811 (1988).

In *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 2856, 77 L.Ed.2d 420 (1983), the Supreme Court explained that section 1331 confers federal jurisdiction over "those cases in which a well-pleaded complaint establishes

---

**10.** The majority suggests that we are limited to the 1958 conception of a workmen's compensation *law,* as "[o]ld words may gain new meaning as circumstances change, but old words *in statutes* retain their meaning; change depends on amendment." (*Ante* at 725 (majority's emphasis).) Even accepting that premise, the statute's use of the general phrase "workmen's compensation laws" suggests that an amendment is not necessary each time a state amends its worker's compensation statute to expand the individual rights provided. That general phrase plainly was intended to encompass the natural evolution of a State's workmen's compensation laws. As one court has suggested, the plural "laws" "seems to indicate [that Congress] envisaged a broader application of the term's use." *Thompson v. Cort Furniture Rental Corp.,* 797 F.Supp. 618, 621 (W.D.Tenn.1992). Moreover, the Supreme Court has interpreted the same term in section 1331 to include the federal common law:

It is well settled that this statutory grant of "jurisdiction will support claims founded upon federal common law as well as those of a statutory origin." Federal common law as articulated in rules that are fashioned by court decisions are "laws" as that term is used in § 1331.

*National Farmers Union Ins. Cos. v. Crow Tribe of Indians,* 471 U.S. 845, 850, 105 S.Ct. 2447, 2450, 85 L.Ed.2d 818 (1985) (quoting *Illinois v. City of Milwaukee,* 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972)); *see also* Martin H. Redish, *Federal Jurisdiction: Tensions in the Allocation of Judicial Power* 96 (2d ed. 1990). The term "laws" in section 1445(c) also is properly understood to encompass common law actions for retaliatory discharge, at least where the cause of action is implied from a substantive provision of a workers' compensation statute. *See Thompson,* 797 F.Supp. at 621.

**11.** One decision synthesized the existing district court case law as follows:

[I]n all of the decisions in which such claims were held to arise under worker's compensation laws, the substantive right to be free from retaliatory discharge was statutorily-created, even if the remedy was provided by the courts rather than by a statutory provision creating a private right of action. Where the state's worker's compensation statute does not even prohibit, much less provide a private remedy for retaliatory discharge, the cause of action will be seen as an independent tort.

*Gonzales v. City of Mesa,* 779 F.Supp. 1050, 1052–53 (D.Ariz.1991) (citations omitted).

either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on a substantial question of federal law." *See also Banks v. Secretary of the Indiana Family and Social Servs. Admin.*, 997 F.2d 231, 237 (7th Cir.1993); *Napoleon Hardwoods, Inc. v. Professionally Designed Benefits, Inc.*, 984 F.2d 821, 822 (7th Cir.1993) ("federal law must create the cause of action, or some substantial, disputed question of federal law must be an element in the claim"); Erwin Chemerinsky, *Federal Jurisdiction* § 5.2, at 231 (1989). Applying that approach in the section 1445(c) context suggests that an action arises under a State workers' compensation law where that law creates the cause of action or where the right to relief necessarily depends on a substantial, disputed question under the law. In my view, the Illinois' workmen's compensation laws create Spearman's cause of action or, at the very least, his claim presents a substantial, disputed question under those laws.

Section 305/4(h) of the Illinois Act makes it unlawful for an employer to discharge an employee in retaliation for the filing of a workers' compensation claim. Although section 305/4(h) does not provide a civil damages remedy and the Illinois Supreme Court was therefore required to imply one in *Kelsay*, the cause of action still looks to whether the employer has violated a policy embodied in the statute. *See, e.g., Ryherd v. General Cable Co.*, 124 Ill.2d 418, 125 Ill.Dec. 273, 277, 530 N.E.2d 431, 435 (1988) ("the specific form of the retaliatory discharge right asserted here flows directly from our Workers' Compensation Act ..."); *Motsch v. Pine Roofing Co.*, 178 Ill.App.3d 169, 127 Ill.Dec. 383, 386, 533 N.E.2d 1, 4 (1988) (setting out required elements to establish a violation of section 305/4(h)); *Wolcowicz v. Intercraft Indus. Corp.*, 133 Ill.App.3d 157, 88 Ill.Dec. 431, 434, 478 N.E.2d 1039, 1042 (1985).[12] Spearman's claim clearly presents a substantial question under the Act within the meaning of *Franchise Tax Bd.*

The majority relies on *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), to reach a different conclusion. That case involved a federal statute under which Congress did not provide for and "did not intend" a private federal remedy (*id.* at 811, 106 S.Ct. at 3233); rather, the proscriptions of the federal statute served only as an element of the plaintiff's state law negligence claim. In those circumstances, the Court concluded that "the presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system." *Id.* at 814, 106 S.Ct. at 3234. Indeed, where Congress had not intended a private federal remedy, it would "flout, or at least undermine, congressional intent to conclude that the federal courts might nevertheless exercise federal-question jurisdiction" over a state cause of action that relies on the federal law. *Id.* at 812, 106 S.Ct. at 3234.

*Merrell Dow* does not control this case. Here, unlike *Merrell Dow*, a *state supreme court* has implied a private remedy for injured employees *under a state statute* that imposes specific duties on employers but does not provide for private enforcement. The present situation is thus akin to a federal court implying a civil damages remedy under a federal statute that either regulates or criminalizes behavior and provides for public but not private enforcement of the duties so imposed. *See T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 827 (2d Cir.1964) (distinguishing the situation where a federal civil claim has been "inferred" from a federal statute), *cert. denied*, 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965); *see also, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982) (federal civil remedy implied); *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (same). An implied civil claim in that circumstance plainly arises under the federal statute for purposes of section 1331. *See* 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3562, at 40 (2d ed. 1984) ("juris-

---

**12.** It is therefore inaccurate for the majority to suggest that section 305/4(h) "has played no role" in the development of the retaliatory discharge tort or in litigation under *Kelsay*. (*See ante* at 725.)

diction will be found if federal law grants the substantive right and it is held that a federal remedy fairly may be implied from that right"); Note, *Implying Civil Remedies from Federal Regulatory Statutes,* 77 Harv.L.Rev. 285, 287–88 & n. 24 (1963) ("There are ... many cases entertaining actions for an implied remedy, and, where jurisdiction is considered, the cause of action apparently is treated as arising under the statute from which it was implied"); *Reitmeister v. Reitmeister,* 162 F.2d 691, 694 (2d Cir.1947) (L. Hand, J.) ("That the District Court had jurisdiction, if there was a civil right, is too plain for debate"); *cf. Merrell Dow,* 478 U.S. at 811 & n. 8, 106 S.Ct. at 3243 & n. 8 (distinguishing a case in which the federal courts would imply a private right of action under a federal statute).

That logic applies as persuasively here. In *Kelsay,* the Illinois Supreme Court simply implied a private right of action and private remedies under a provision of the Act that imposed duties on Illinois employers but provided only for public enforcement. *See Alexander,* 612 F.Supp. at 1121; *see also Thomas,* 583 F.Supp. at 1037 n. 10. The supreme court explained its reasons for implying the private cause of action under section 305/4(h) as follows:

> The employer argues that the absence of any provisions for civil remedies for retaliatory discharge in [section 305/4(h)], which make[s] it a criminal offense for an employer to threaten or effect such a discharge, is a conscious decision by the legislature that no such civil remedy shall exist. We do not agree. As we have noted, retaliatory discharge is offensive to the public policy of this State as stated in the Workmen's Compensation Act. This policy can only be effectively implemented and enforced by allowing a civil remedy for damages, distinct from any criminal sanctions which may be imposed on employers for violating the Act after 1975. The imposition of a small fine, enuring to the benefit of the State, does nothing to alleviate the plight of those employees who are threatened with retaliation and forgo their rights, or those who lose their jobs when they proceed to file claims under the Act. It is conceivable, moreover, that some em-

ployers would risk the threat of criminal sanction in order to escape their responsibility under the Act. Further, the fact that an act is penal in nature does not bar a civil remedy, and where a statute is enacted for the benefit of a particular class of individuals a violation of its terms may result in civil as well as criminal liability, even though the former remedy is not specifically mentioned.

*Kelsay,* 23 Ill.Dec. at 564–65, 384 N.E.2d at 358–59. As its discussion reveals, the supreme court believed it necessary to recognize a private cause of action in order to vindicate the particular interests served by section 305/4(h) and the Illinois Workers' Compensation Act generally. In my view, this implied cause of action plainly arises under the workmen's compensation laws of the State of Illinois so that section 1445(c) bars removal of such a case to federal court. I respectfully dissent.